**WILLIAM H. THOMAS (ISB 3154)**
**THOMAS, WILLIAMS & PARK, LLP**
121 N. 9th St., Ste. 300
P.O. Box 1776
Boise, ID  83701-1776
Telephone:  (208) 345-7800
Fax:  (208) 345-7894
wmthomas@thomaswilliamslaw.com

**Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF IDAHO

| | |
|---|---|
| KENDRA KENYON, an individual,<br><br>              Plaintiff,<br><br>vs.<br><br>C.L. "BUTCH" OTTER, in his individual capacity, SEVERINA "SAM" HAWS, Administrator of the Idaho Commission on Aging, in her individual capacity, CAREY SPEARS, DAVID PANKEY, LORRAINE ELFERING, DAVID MAESTAS, SHARON STRUM, COLEEN ERICKSON, and VICTOR WATSON, Commissioners of the Idaho Commission on Aging, in their individual capacities<br><br>              Defendants. | **Case No. 1:15-cv-00060**<br><br>**COMPLAINT** |

For her cause of action against Defendants, Plaintiff Kendra Kenyon, by and through her attorneys of record, Thomas Williams & Park, LLP, complains and alleges:

**COMPLAINT**, Page 1

## INTRODUCTION

1.      This is an action arising from Defendants' violations of Kendra Kenyon's constitutional rights pursuant to the First and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.  In retaliation for Plaintiff's exercise of her First Amendment rights in speaking about systemic violations and misallocation of funds under the federal Older Americans Act by the Idaho Commission on Aging ("ICOA"), Defendants caused Plaintiff to be terminated from her position with a contractor for the Idaho Commission on Aging.

## JURISDICTION, VENUE AND PARTIES

2.      This action arises under the Constitution of the United States, as well as 42 U.S.C. §§ 1983 and 1988.  This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Defendants' unlawful actions were committed within the State of Idaho, County of Ada and venue is proper in the Southern Division of the District of Idaho pursuant to 28 U.S.C. § 1391(b)(2) and under Dist. Idaho Loc. Civ. R. 3.1.

4.      Plaintiff resides in Ada County, Idaho, and was at relevant times the President of Ida-Ore Planning and Development Association, Inc., d/b/a Idaho Council of Governments ("ICOG"), an Idaho non-profit corporation with its registered office located in Ada County, Idaho.  Plaintiff resides in Ada County, Idaho.

5.      At relevant times, non-party ICOG was the "Area Agency on Aging" ("AAA") for ten counties in southwest Idaho contracting with the Idaho Commission on Aging under the Older Americans Act, 42 U.S.C. § 3001, *et seq*., to promote the development of a comprehensive and coordinated system of home and community-based care to, among others, individuals aged

**COMPLAINT**, Page 2

60 and older. ICOG has been the designated AAA for southwest Idaho since approximately 1972 and has significant experience in the coordination and delivery of services to seniors.

6. Defendant C.L. "Butch" Otter is the Governor of the State of Idaho and has designated the Idaho Commission on Aging within the Executive Office of the Governor as the agency of state government to constitute the "State Unit on Aging" for purposes of the federal Older Americans Act under 42 U.S.C. § 305(a)(2) and Idaho Code § 67-5001. Defendant Otter is sued in his individual capacity acting under color of state law.

7. Defendant Severina "Sam" Haws is, and for all relevant time was, the Administrator of the Idaho Commission on Aging within the Executive Office of the Governor. Defendant Haws was principally responsible for the unlawful retaliation complained of herein. Defendant Haws is sued in her individual capacity acting under color of state law.

8. Defendants Commissioners Carey Spears, David Pankey, Lorraine Elfering, David Maestas, Sharon Sturm, Coleen Erickson and Victor Watson ("the Commissioner Defendants") were responsible for overseeing and exercising the official duties, powers and authorities of the Idaho Commission on Aging, including supervising the Administrator Defendant Haws, as set forth in Idaho Code § 67-5003. They are each sued in their individual capacities acting under color of state law.

## FACTUAL ALLEGATIONS

9. Plaintiff incorporates paragraphs 1 through 8 above.

10. Congress enacted the Older Americans Act ("OAA") in 1965, establishing the Administration on Aging ("AOA") in the predecessor department to the U.S. Department of Health and Human Services and authorizing state agencies to work with the AOA to address the social services needs of the aging population.

11. In subsequent amendments to the OAA, Congress utilized the concepts of "Planning and Service Areas" ("PSAs"), "State Units on Aging" ("SUAs") and "Area Agencies on Aging" ("AAAs") in providing benefits under the OAA.

12. Under the OAA, states are required to designate a state agency as the SUA pursuant to 42 U.S.C. § 305(a)(2) ("Section 305(a)(2)"). As set forth above, the Idaho Commission on Aging within the Executive Office of the Governor is the agency of state government designated by Idaho's Governor as the SUA, pursuant to Idaho Code § 67-5001.

13. The SUA is required to delineate geographic areas of a given state as PSAs. With certain exceptions, the SUA is also required to designate AAAs, pursuant to the requirements of Section 302(a)(2):

> the State agency shall ----
>
> (A) ...designate for each such area after consideration of the views offered by the unit or units of general purpose local government in such area, a public or private nonprofit agency or organization as the area agency on aging for such area.

14. Idaho's PSAs comprise six geographic areas of the State delineated by the Idaho Commission on Aging. "PSA III" consists of the ten counties of southwest Idaho (Ada, Adams, Boise, Canyon, Elmore, Gem, Owyhee, Payette, Valley and Washington). PSA III is by far the largest, both in population and geography of Idaho's six PSAs. PSA III serves approximately 55% of Idaho's seniors.

15. ICOG has been the designated AAA for PSA III since approximately 1972. Its Board of Directors is comprised of County Commissioners from each of the ten counties in PSA III, along with Mayors, City Councilpersons and business leaders.

16. As the AAA for PSA III, at all relevant times, ICOG received both federal and state funding to deliver services outlined in the OAA and the Idaho Senior Services Act. ICOG

**COMPLAINT**, Page 4

directly provided several services (Information and Assistance/Aging and Disability Resource Center, Case Management, Adult Protection, Long-Term Care Ombudsman, and Health Promotion and Disease Prevention) and contracted out remaining services (Congregate and Home-Delivered Meals, Caregiver Counseling, Homemaker, Respite, Legal Services and Transportation).

17. The Idaho Commission on Aging receives from the Idaho Legislature an annual allotment of funds to be administered pursuant to the Idaho Senior Services Act to be used for the benefit of all older people. Idaho Code § 67-5005 provides:

> Legislative intent. The legislature hereby finds and recognizes the need to provide basic necessities to its older people in their later years and particularly in providing efficient community services, including access transportation, adequate nutrition, in-home services, and adult day care, designed to permit its older people to remain independent and to be able to avoid institutionalization; and that these services be provided in a coordinated manner and be readily available when needed and accessible to all older people.

18. The Idaho Commission on Aging also receives from the federal Administration on Aging an annual allotment of funds under the OAA. This allotment is based upon Idaho's proportion of the total population in the United States age sixty or older, but cannot be less than a minimum set by statute. See 42 U.S.C. §§ 3024(a)(1) and (a)(3).

19. The total funding provided by the Idaho Commission on Aging to the various state AAAs for fiscal year 2012 for federal and state expenditures was $9,808,286.00.

20. The amount of funding provided by the Idaho Commission on Aging to ICOG and to Idaho's five other AAAs is determined through application of the federally required "Intrastate Funding Formula." Section 305(a)(2)(C) of the OAA requires that such formulas be developed:

> in consultation with area agencies, in accordance with guidelines issued by the Assistant Secretary, and using the best available data, develop and publish for

**COMPLAINT**, Page 5

review and comment a formula for distribution within the State of funds received under this title that takes into account—

>   (i)   the geographical distribution of older individuals in the State; and

>   (ii) the distribution among planning and service areas of older individuals with greatest economic need and older individuals with greatest social need, with particular attention to low-income minority older individuals...

21. Section 102(a) of the OAA specifically defines "greatest economic need" and "greatest social need" as follows:

>   (23) The term "greatest economic need" means the need resulting from an income level at or below the poverty line.
>
>   (24) The term "greatest social need" means the need caused by non-economic factors, which include-
>
>   (A) physical and mental disabilities;
>   (B) language barriers; and
>   (C) cultural, social, or geographical isolation, including isolation caused by racial or ethnic status, that-
>
>   >   (i) restricts the ability of an individual to perform normal daily tasks; or
>   >   (ii) threatens the capacity of the individual to live independently.

22. Plaintiff believed correctly that Idaho's Intrastate Funding Formula, which is attached as **Exhibit A** and hereby incorporated by reference pursuant to Fed.R.Civ.P. 10(c), failed to comply with federal law in that it failed to consider properly the geographical distribution of older individuals in the state and failed to consider the distribution of individuals aged 60 and older with physical and mental disabilities, all in contravention of Section 305(a)(2)(C) of the OAA.

23. The general population of Idahoans aged 60 and older is reflected in Column 2 of the Formula's graphic depiction, but that column is not included in the actual funding calculation. The funding allocation would not change if Column 2 contained nothing but zeroes.

**COMPLAINT**, Page 6

24. Upon information and belief, the Intrastate Funding Formulas for the similarly situated other 41 states address both subsection (i) and (ii) of 305(a)(2)(C) of the OAA. Only Idaho's Formula fails to address both mandatory subsections.

25. Idaho's Intrastate Funding Formula is a matter of broad public concern, given that it directly affects the number of seniors who may receive services. Historically, PSA III has delivered services to seniors at a lower per capita basis than other areas. Idaho's Intrastate Funding Formula inappropriately funds other AAAs where the per capita cost is higher, meaning that fewer seniors are serviced in Idaho overall.

26. Idaho's Intrastate Funding Formula is a matter of broad public concern, also given that PSA III, as well as certain other PSAs, are underfunded because of the Formula and have been required to maintain services waiting lists on various occasions.

27. The ICOG Directors and staff have long been concerned that the Intrastate Funding Formula does not comply with federal law and that the Idaho Commission on Aging retains too much funding for administration, rather than providing more money to the various state AAAs for the delivery of services to seniors.

28. ICOG submitted its SFY 2014 budget to the Idaho Commission on Aging on June 27, 2013. According to the budget, PSA III would pay 35% of Plaintiff's salary from AAA administrative funds from the Idaho Commission on Aging. Historically, the Idaho Commission on Aging approved budgets with a much higher percentage of the President's salary coming from AAA administrative funds. The Idaho Commission on Aging through Sam Haws approved this budget on or about June 30, 2013.

29. In June, 2013, Plaintiff met Defendant Haws for a lunch meeting and raised the issue of the non-compliant Intrastate Funding Formula.

**COMPLAINT**, **Page 7**

30. Subsequently, later in approximately June, 2013, Plaintiff met with Defendant Haws and again tried to raise the issue of the non-compliant Intrastate Funding Formula and the excessive administrative funds retained by the Idaho Commission on Aging. Defendant Haws turned the meeting over to her deputy Jeff Weller and others and left.

31. On July 11, 2013, Plaintiff and Sarah Scott had another meeting with Defendant Haws in which Plaintiff tried to discuss the non-compliant Intrastate Funding Formula with her. Defendant Haws insisted it was the Idaho Commission on Aging's decision alone.

32. Subsequently, beginning in approximately July, 2013, Plaintiff had conversations and meetings with Patrick J. Sullivan of Sullivan and Reberger. Sullivan and Reberger advertise themselves as "Idaho's premier lobbying and campaign consulting firm." In these conversations and meetings, Plaintiff explained the problem with the non-compliant intrastate funding formula, as well as excessive funding being retained by Idaho Commission on Aging for administration, rather than being provided to state AAAs for the delivery of services. Mr. Sullivan indicated he was discussing Plaintiff's concerns with Tammy Perkins, the Senior Special Assistant for Health and Social Services with the Office of the Governor, as well as David Hensley, Chief of Staff to the Governor.

33. Upon information and belief, Defendant Sam Haws was aware of Plaintiff's communications, conversations and meetings with Ms. Perkins and Mr. Hensley.

34. On August 23, 2013, Plaintiff attended a meeting with Sam Haws and her deputy, Jeff Weller, Sarah Scott, ICOG AAA staff, ICOG Board Chair Gordon Cruickshank, ICOG Board Vice Chair Judy Peavy Derr, ICOG Advisory Council Vice Chair and State Representative Darrell Bolz, as well as others, and raised again the issue of the non-compliant Intrastate Funding Formula. Plaintiff also raised the issue of excessive funding being retained by

Idaho Commission on Aging for administration.  Defendant Haws indicated she would get back to ICOG personnel, which did not occur.

35. Instead, on September 16, 2013, Idaho Commission on Aging Director Sam Haws sent ICOG's Director of Finance an email announcing a sudden reduction in the Idaho Commission on Aging's AAA contribution to Plaintiff's salary to 10% without explanation.

36. As a result of the reduction in the Idaho Commission on Aging's contribution, *inter alia,* the ICOG Board of Directors voted to deliver to the Governor a letter addressing their concerns regarding the actions of Defendant Haws.  Plaintiff, as President of ICOG, and Sarah Scott, as AAA Director for ICOG, were tasked with drafting the letter, several drafts of which were circulated to the Board.  Attached as **Exhibit B** is the final version of the letter dated November 14, 2013, which was provided to the Governor and is hereby incorporated by reference pursuant to Fed.R.Civ.P. 10(c).

37. The November 14, 2013 letter stated in part:

> In addition, we are offended by Ms. Haws' baseless reduction of ICOG's President's percentage allocation of time in our AAA budget.  <u>Our President's percentage allocation as set forth in our AAA budget was initially approved in writing by Ms. Haws on June 27, 2013.</u>  During a meeting at our office on August 23, 2013, our Board Chair and President attempted to discuss with Ms. Haws and her deputy a variety of issues, including the statutorily non-compliant intrastate funding formula.  Soon thereafter, apparently in retaliation for asking these questions, Ms. Haws arbitrarily and without foundation reduced our President's time allocation (funding) so significantly that we are being forced to terminate our President's employment effective January 1, 2014.
>
> It is alarming that the reduction in funding resulting in the loss of this executive's employment happened only after potential statutory violations were brought to ICOA's attention.  For decades, the allocation was never an issue, and for the year in question the budget <u>had already been approved.</u>  There is a clear nexus between what appears to be legitimate AAA advocacy

**COMPLAINT**, Page 9

>
> activities and Ms. Haws' tortious interference with the contractual expectation of this executive and her right to exercise free speech. (emphasis in original)

38. The November 14, 2013 letter further stated:

> We believe the senior citizens residing in southwest Idaho would be outraged that our region is not receiving the funding to which it is entitled under the Older Americans Act and that ICOA [the Idaho Commission on Aging] is making unilateral decisions that are not in the best interests of Idaho's aging network and those we serve.
>
> We respectfully request that you appoint to the critical position of ICOA Administrator someone who has the passion, educational background, and expertise needed to serve our valued senior citizens.

39. Upon information and belief, Defendants Otter and the Commissioner Defendants took no corrective actions with regard to Defendant Haws and to the complaints expressed in the November 14, 2013 letter, nor to the earlier concerns voiced by Plaintiff to Ms. Perkins or Mr. Hensley of the Office of the Governor.

40. Upon information and belief, Defendant Haws and the Commissioner Defendants were provided a copy of the November 14, 2013, letter and knew of Plaintiff's role in drafting the letter.

41. As a result of the unexplained, sudden reduction in the Idaho Commission on Aging's contribution, ICOG was forced to terminate Plaintiff's employment effective January 1, 2014.

42. As a further result of the reduction in the Commission on Aging's contribution, on or about January 14, 2014, ICOG entered into a Consultant Agreement with Plaintiff, whereby Plaintiff continued to provide services to ICOG, although unrelated to ICOG's role as the PSA III AAA, at a significantly reduced rate of compensation.

**COMPLAINT**, **Page 10**

43.     In a letter dated May 30, 2014, in further retaliation for Plaintiff's various communications regarding Idaho non-compliant formula, as well as the excessive funding retained by Idaho Commission on Aging, Defendant Haws "de-designated" ICOG as the AAA for PSA III ("the De-designation Letter"), attached as **Exhibit C**, which is hereby incorporated by reference pursuant to Fed.R.Civ.P. 10(c).

44.     In the De-designation Letter, Defendant Haws writes in her "BACKGROUND" section, that on August 23, 2013, she met with Plaintiff and others.  Several issues were discussed, including "ICOG's interpretation of the 10% administrative funding limitation for the Area III and the ICOG's disagreement with the Intrastate Funding Formula (IFF)."

45.     At the end of the "BACKGROUND" section of the De-designation Letter, Haws wrote, *inter alia*, "the ICOG and Area III Director continue to exhibit behavior and activity which demonstrates a lack of willingness to work with ICOA…The ICOG and the Area III Director refuse to accept ICOA's authority and guidance;  …continue to undermine ICOA's direction through persistent challenges of ICOA's policies and guidelines, in particular the IFF."

46.     In the De-designation Letter, under a section labeled "GROUNDS FOR WITHDRAWAL OF AREA III'S AREA AGENCY ON AGING (AAA) DESIGNATION," Defendant Haws cited the November 14, 2013, letter to the Governor, as well as other ICOG communications regarding the non-compliant Intrastate Funding Formula.

47.     On July 1, 2014, the Idaho Commission on Aging assumed and took upon itself PSA III's responsibility for services under the OAA.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**(Defendant Haws)**

48.     Plaintiff incorporates paragraphs 1 through 47 above.

**COMPLAINT**, **Page 11**

49. Plaintiff's protected speech and disclosing the misallocation of funds by the Idaho Commission on Aging, was a substantial or motivating factor when Defendant Haws retaliated against Plaintiff by reducing previously approved funds dedicated toward her salary, causing her position to be eliminated and her retention only as a contractor at a significantly reduced rate of compensation.

50. Plaintiff's protected speech and disclosing the misallocation of funds by the Idaho Commission on Aging, was a substantial or motivating factor in Defendant Haws decision to de-designate Plaintiff's employer and contracting agency as the AAA for PSA III, causing even Plaintiff's contractor status to end.

51. The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendant Haws against Plaintiff created a chilling effect on her legitimate political, social and organizational speech by creating fear, hesitation, hostility and other destructive responses within the ranks of all AAAs in Idaho.

52. In committing the acts alleged herein, Defendant Haws violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression. Specifically, Defendant Haws took these actions against Plaintiff in direct retaliation for, and in response to the various protected activities of Plaintiff, including but not limited to her complaints about mismanagement of public funds, and the prospect of Plaintiff engaging in such activities.

53. The actions and omissions of Defendant Haws were done under color of state law in her individual capacity as a state official and as a policy making authority to which the state delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

**COMPLAINT**, Page 12

54. It was or should have been plainly obvious to any reasonable individual or policy making official that the acts and omissions of Defendant Haws as alleged herein, taken singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In so doing, Defendant Haws acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights.

55. Defendant Haws' actions toward Plaintiff were designed to retaliate against and chill political expression.

56. Defendant's actions, as identified in the foregoing Constitutional violations, have caused Plaintiff immediate and irreparable injury to her person resulting in the deprivation of her constitutional rights, privileges and immunities. Plaintiff has experienced and continues to experience humiliation, degradation, mental distress, financial loss, loss of reputation, slander, defamation and severe emotional anguish for which Defendants are jointly and severally liable.

57. Under 42 U.S.C. 1988(b), Plaintiff is entitled to recover her reasonable attorney fees as part of her costs in prosecuting her claims.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**(Defendants Otter, Spears, Pankey, Elfering, Maestas, Strum, Erickson and Watson)**

58. Plaintiff incorporates paragraphs 1 through 57 above.

59. Pursuant to Idaho Code § 67-802(1), *inter alia*, Defendant Otter had a duty to supervise the official conduct of all executive and ministerial officers, including Defendant Haws.

60. Pursuant to Idaho Code § 67-5003, *inter alia,* as commissioners of the Idaho Commission on Aging, the Commissioner Defendants had a duty, in consultation with Defendant

Haws, to perform the powers and duties of the Idaho Commission on Aging pursuant to the OAA, which included the duty to supervise Defendant Haws.

61.     As set forth above, Defendants Otter and Commissioner Defendants knowingly refused to terminate a series of actions by Defendant Haws, which they knew or reasonably should have known would cause her to inflict a constitutional injury to Plaintiff.

62.     As set forth above, Defendants Otter and Commissioner Defendants failed to act in the training, supervision and/or control of Defendant Haws by knowing of her actions and not taking reasonable measures to prevent or discontinue her interference with Plaintiff's rights.

63.     As set forth above, Defendants Otter and Commissioner Defendants acquiesced in and had personal knowledge of the constitutional deprivation inflicted by Defendant Haws on Plaintiff. Defendants knew of the violations and failed to act to prevent or redress them.

64.     As set forth above, Defendants Otter and Commissioner Defendants engaged in conduct that showed a reckless or callous indifference to the rights of Plaintiff.

65.     The actions and omissions of Defendant Otter and the Commissioner Defendants were done under color of state law in their individual capacities as state officials and as policy making authorities to which the state delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

66.     It was or should have been plainly obvious to any reasonable individual or policy making official that the acts and omissions of Defendant Haws as alleged herein, taken singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In failing to supervise and correct Haws, Defendant Otter and the Commissioner Defendants acted with malicious intent to violate Plaintiff's rights, or at least

in conscious, reckless and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights.

67. Defendant's actions, as identified in the foregoing Constitutional violations, have caused Plaintiff immediate and irreparable injury to her person resulting in the deprivation of her constitutional rights, privileges and immunities.  Plaintiff has experienced and continues to experience humiliation, degradation, mental distress, financial loss, loss of reputation, slander, defamation and severe emotional anguish for which Defendants are jointly and severally liable.

68. Under 42 U.S.C. 1988(b), Plaintiff is entitled to recover her reasonable attorney fees as part of her costs in prosecuting her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendants for reasonable monetary damages, including back pay (plus interest or an appropriate inflation factor and an enhancement to offset any adverse tax consequences associated with lump sum receipt of back pay), front pay, benefits, and all other damages owed to Plaintiff, in an amount to be proven at trial;

2. That Plaintiff be awarded costs including, but not limited to, attorney fees, expert fees and other costs and expenses of this litigation pursuant to 42 U.S.C. § 1988;

3. That Plaintiff be awarded compensatory damages for injury to her reputation, for adverse effects on her career, and for diminished earning capacity resulting from the discriminatory and retaliatory actions of Defendants;

4. For mental and emotional distress damages;

5. For pre-judgment and post-judgment interest as provided by law;

6. For punitive damages against the individual defendants;

7. That Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable;

DATED this 25th day of February, 2015.

                                  THOMAS, WILLIAMS & PARK, LLP


                                  */s/ William H. Thomas*
                                  William H. Thomas
                                  Attorneys for Plaintiff